ORIGINAL                                                                    ORIGINAL

Robert J. Beles Bar No. 41993
Paul McCarthy Bar No. 139497
One Kaiser Plaza, Suite 2300
Oakland, California 94612-3642
Tel No. (510) 836-0100
Fax. No. (510) 832-3690

Attorneys for *Petitioner* ROBERT LYMAN

### In the United States District Court
### Northern District of California

| | |
|---|---|
| ROBERT LYMAN, <br><br>　　　　　Petitioner, <br>　　vs. <br><br> LARRY SCRIBNER, Warden, Calipatria State Prison, California, <br><br>　　　　　*Defendant.* <br><br> PEOPLE OF THE STATE OF CALIFORNIA, <br><br>　　　　*Real Party in Interest.* | No. **C08 - 02478 JSW** <br><br> PETITION FOR WRIT OF HABEAS CORPUS; MEMORANDUM OF POINTS AND AUTHORITIES |

### PETITION FOR WRIT OF HABEAS CORPUS

### MEMORANDUM OF POINTS AND AUTHORITIES

ORIGINAL                                                    ORIGINAL

# TABLE OF CONTENTS

*item*                                                   *page number*

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

    1. Statement of Custody. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p-1

    2 Statement of Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p-1

        a. Preliminary examination testimony.. . . . . . . . . . . . . . . . . . . . . . . . . . . p-1

        b. Proceedings following the section 995 motion. . . . . . . . . . . . . . . . . . . p-3

        c. Plea hearing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p-3

        d. Motion to set aside plea and 995 motion. . . . . . . . . . . . . . . . . . . . . . . p-3

        e. Superior Court habeas corpus petitions. . . . . . . . . . . . . . . . . . . . . . . . p-4

        f. Court of Appeals habeas corpus petition. . . . . . . . . . . . . . . . . . . . . . . . p-6

        g. Supreme Court habeas petition.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p-6

    3. Claims for relief. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p-6

    4. Need for writ remedy. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p-7

    5. Evidentiary hearing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p-7

    6. Prayer for relief.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p-7

VERIFICATION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p-7

MEMORANDUM OF POINTS AND AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . m-1

    1. The state court opinion was an unreasonable application of established
    Supreme Court law.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . m-1

    2. Musolf's admission of lying had much greater weight than mere evidence that
    she had lied.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . m-2

    3. Musolf's confession undermined the prosecution's kidnaping theory. . . . . . . . m-3

    4. The newly discovered Torres statement further undermined the kidnaping
    theory.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . m-3

    5. Petitioner entered his plea due to his counsel's misconduct and ineffective
    assistance.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . m-4

        a. Petitioner is entitled to the effective assistance of counsel at all stages of
        the criminal proceeding, including the plea.. . . . . . . . . . . . . . . . . . . . . m-4

        b. Petitioner's counsel was ineffective. . . . . . . . . . . . . . . . . . . . . . . . . . m-4

i

ORIGINAL                                                        ORIGINAL

*item*                                                    *page number*

        i. Counsel concealed Musolf's confession. . . . . . . . . . . . . . . . . .  m-4

        ii. Petitioner was prejudiced by Moyal's ineffective assistance.. . . . .  m-7

6. The prosecution has not performed its duty to correct false testimony of its witness, Musolf.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  m-8

7. The Torres statement is newly discovered evidence that was not available at the time of the plea.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  m-8

8. Material facts are in dispute, necessitating an evidentiary hearing at which Mr. Moyal will be subject to cross-examination.. . . . . . . . . . . . . . . . . . . . . . . . . . . .  m-9

9. Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  m-12

Petition for Writ of Habeas Corpus; Memorandum of Points and Authorities

ORIGINAL                                                                                                    ORIGINAL

1                                    **TABLE OF AUTHORITIES**

2    *cases*                                                                            *page number*

3    *Alcala v. Woodford*, 334 F.3d 862 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . m-2

4    *Anderson v. Terhune*, 516 F.3d 781 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . m-2

5    *Arizona v. Fulminante*, 499 U.S. 279, 111 S. Ct. 1246,113 L. Ed. 2d 302, (1991). . . . . . m-2

6    *Baja v. Ducharme*, 187 F.3d 1075 (9th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . m-10

7    *Barker v. Fleming*, 423 F.3d 1085 (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . m-2

8    *Baylor v. Estelle*, 94 F.3d 1321 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . m-5

9    *Earp v. Ornoski*, 431 F.3d 1158 (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . m-10-12

10   *Evans v. Lewis*, 855 F.2d 631 (9th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . m-5

11   *Evitts v. Lucey*, 469 U.S. 387, 105 S.Ct. 830, 835, 83 L.Ed.2d 821 (1985). . . . . . . . . . . m-6

12   *Hart v. Gomez*, 174 F.3d 1067 (9th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . m-5

13   *Hayes v. Brown*, 399 F.3d 972, 986 (9th Cir. 2005. . . . . . . . . . . . . . . . . . . . . . . . . . . . . m-2

14   *Henry v. Kernan*, 197 F.3d 1021 (9th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . m-2

15   *Hill v. Lockhart,* 474 U.S. 52, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985) . . . . . m-2, m-4, m-7

16   *Horton v. Mayle*, 408 F.3d 570 (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . m-2

17   *Insyxiengmay v. Morgan*, 403 F.3d 657 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . m-10, m-11

18   *Jones v. Barnes*, 463 U.S. 745, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983). . . . . . . . . . . . m-7

19   *Jones v. Wood*, 114 F.3d 1002 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . m-10

20   *Keeney v. Tamayo-Reyes,* 504 U.S. 1, 112 S. Ct. 1715, 118 L. Ed. 2d 318 (1992). . . . . m-10

21   *Kimmelman v. Morrison*, 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). . . . . . . m-5

22   *Lockyer v. Andrade*, 538 U.S. 63, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). . . . . . . . m-10

23   *Mempa v. Rhay,* 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967). . . . . . . . . . . . . . . m-4

24   *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). . . . . . . . . . . . . m-8

25   *Osborn v. Shillinger*, 861 F.2d 612 (10th Cir.1988) . . . . . . . . . . . . . . . . . . . . . . . . m-5, m-6

26   *Phillips v. Woodford*, 267 F.3d 966 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . m-11

27   *Sanders v. Ratelle*, 21 F.3d 1446 (9th Cir.1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . m-5

28   *Silva v. Brown*, 416 F.3d 980 (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . m-2

Petition for Writ of Habeas Corpus; Memorandum of Points and Authorities

ORIGINAL                                                                    ORIGINAL

cases                                                                  page number

*Stankewitz v. Woodford*, 365 F.3d 706 (9th Cir. 2004. . . . . . . . . . . . . . . . . . . . . . . .  m-11

*Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).. . . . . .  m-5

*Taylor v. Maddox*, 366 F.3d 992 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . m-11, m-12

*Thompson v. Calderon,* 120 F.3d 1045 (9th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . .  m-8

*Toomey v. Bunnell*, 898 F.2d 741 (9th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . .  m-7

*Townsend v. Sain*, 372 U.S. 293, 83 S. Ct. 745, 9 L. Ed. 2d 770 (1963). . . . . . . . m-10, m-12

*United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). . . .  m-5, m-7

*United States v. Swanson*, 943 F.2d 1070 (9th Cir. 1991). . . . . . . . . . . . . . . . . . . . .  m-5-7

*United States v. Williams*, 435 F.3d 1148 (9th Cir. 2006). . . . . . . . . . . . . . . . . . . . . .  m-2

*Williams v. Taylor*, 529 U.S. 420, 120 S. Ct. 1479, 146 L. Ed. 2d 435 (2000). . . . . . . .  m-10

*Williams v. Woodford*, 384 F.3d 567 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . .  m-11


statutes                                                               page number

28 U.S.C. section 2254(d)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  m-12

Penal Code section 245(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  p-3

Penal Code section 995 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  p-3

Penal Code section 12022.7(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p-3, p-4

United States Constitution, Fourteenth Amendment. . . . . . . . . . . . . . . . . . . . . . . . . .  m-4

United States Constitution, Sixth Amendment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  m-4

ORIGINAL                                                    ORIGINAL

### In the United States District Court
### Northern District of California

ROBERT LYMAN,

                  *Petitioner,*

      vs.

LARRY SCRIBNER, Warden, Calipatria
State Prison, California,

              *Defendant.*

PEOPLE OF THE STATE OF CALIFORNIA,

         *Real Party in Interest.*

No. **C08 - 02478 JSW**

PETITION FOR WRIT OF HABEAS CORPUS

## PETITION FOR WRIT OF HABEAS CORPUS

Comes now Robert Anthony Lyman, petitioner, and petitions this court for a writ of habeas corpus.

### 1. Statement of Custody

1. Petitioner is presently in the custody of the California Department of Corrections, serving a five year prison sentence at the Calipatria State Prison, California.

2. Larry Scribner is the Warden of Calipatria State Prison. The real party in interest is the People of the State of California.

### 2 Statement of Facts

3. In 2005, petitioner was charged with various assault related crimes, plus kidnaping, based on a complaint by Tammi Musolf (CW) that, on December 24, 2004, petitioner forced her into her son's van and physically assaulted her in the van.

#### a. Preliminary examination testimony

4. On March 28, 2005, the preliminary examination was held. The prosecution presented the testimony of two witnesses: Tami Musolf, the complaining witness, and Sandi Browne.

5. Musolf testified as follows: She met with petitioner on December 24, 2004 at his apartment in Pleasant Hill at about 2pm. (PX p. 6.) She told petitioner that she was going shopping and petitioner wanted to come along. They took a van belonging to Musolf's son. (PX

ORIGINAL                                                                    ORIGINAL

p. 7.) When they got to the van, petitioner insisted on driving. (PX p. 8.) He shoved Musolf over to the passenger side, got in the driver's seat, and began driving. When Musolf objected, petitioner grabbed her hair, told her to shut up, and threatened her life. (PX p. 9-10) Petitioner pushed her down to the floor of the van. Musolf tried to get out, but when she opened the door, petitioner grabbed her coat, yanked her back into the van, and continued to drive. (PX p. 11.) Petitioner then put his foot on Musolf's back, pushed her to the floor of the van, and told her not to say anything or he would kill her. He told her he was going to go to his mother's house. (PX p. 12.) Petitioner then hit Musolf a couple of times and broke her nose. (PX p. 13.) Petitioner drove past his mother's home to Treat Boulevard in Concord, and hit her between two and four times. (PX p. 14.) Musolf then heard a car horn honking and saw a car driven by a woman with a cell phone pull up to the side of the van. (PX p. 16.) Petitioner then pulled the van over, got out of the van, and ran away. (PX p. 16.)

   6. Musolf denied that the van parked or made any stops before this time. (PX. p. 13, 25.)

   7. Musolf denied drinking any alcohol on December 24, 2004, (PX p. 21, 25, 34) and denied going to Safeway to purchase anything. (PX p. 25.) Musolf said that if Dwane Taylor testified that she had been drinking alcohol that day at his house, he would be lying. (PX p. 26.)

   8. Browne testified as follows: On December 24, 2004, while driving in Concord at about 4:00 pm, she saw a van in which the driver was beating the passenger. (PX p. 50.) She called 911, and then saw the driver take both hands off the steering wheel and hit the passenger with both hands. She then pulled up to the van and had the passenger (Musolf) climb through the passenger window of the van into her car. (PX p. 52-53.) Musolf could not find her purse, so Browne took Musolf back to a Walgreens to look for the purse, and then to the hospital. (PX p. 54.)

   9. Brown testified that she saw the alleged beating occurring for less than a minute. (PX p. 58.) It was near dusk when she observed this, and there were no interior lights on inside the van. (PX p. 59.) The passenger was crouched down and Brown could not see the passenger. (PX p. 59.)

ORIGINAL                                                                ORIGINAL

### b. Proceedings following the section 995 motion

10. The information was filed on April 11, 2005. Between April 11, 2005, and November 7, 2005, when trial was ultimately set, the defense filed a discovery and a continuance motion, but no other written motions.

### c. Plea hearing

11. On November 7, 2005, (which was the scheduled trial date), petitioner entered a plea of no contest to Penal Code section 245(a)(1), assault likely to produce great bodily injury, and a great bodily injury enhancement under Penal Code section 12022.7(e), for an indicated term of five years in prison.

### d. Motion to set aside plea and 995 motion

12. On December 8, 2005, the defense filed a motion to withdraw petitioner's plea. Defense counsel's supporting declaration stated that petitioner was unaware at the time of the plea that the complaining witness Musolf had admitted to petitioner's investigator that she had lied at the preliminary examination.

12. Sentencing was continued until January 6, 2006. The prosecution filed a memorandum opposing the motion to withdraw the plea on December 29, 2006.

13. On January 4, 2006, two days before the scheduled sentencing, Mr. Moyal attempted to file a motion to set aside the information under Penal Code section 995. In the supporting memorandum, Mr. Moyal argued that he had new evidence that Musolf had lied during the preliminary examination, which consisted of a declaration by investigator John McCarty that she had lied during the preliminary examination when she denied purchasing alcohol at Safeway on December 24, 2004, and consuming alcohol on that date. Petitioner's sentencing was set for January 6, 2006. The clerk declined to file it and advised Mr. Moyal to get a hearing date from the court.

14. On January 6, 2006, at the motions hearing / sentencing, Mr. Moyal admitted that investigator McCarty had obtained the admissions from Musolf before the November 7, 2005 plea, but argued that this was "new evidence" because McCarty had not advised Moyal of the results of the interview at the time of the plea:

ORIGINAL                                                              ORIGINAL

"He was not here to tell us about it, and he went to Arkansas on the date of the trial was scheduled, and I wanted to bring that up at the trial – if the trial proceeded as, you know, the – Mr. Lyman's plead is accepted." (Sentencing transcript, p. 12-13.)

15. The court held that this "new evidence" was not sufficient to set aside the plea.

### e. Superior Court habeas corpus petitions

16. Petitioner submitted an initial habeas corpus petition to the superior court, in which he attached his declaration stating the following: that on the day of the plea hearing, Mr. Moyal advised him to accept the prosecution's offer to plead to one count of section 245(a)(1), assault by force likely to produce great bodily injury, and a section 12022.7(e) enhancement for causing great bodily injury. Mr. Moyal told petitioner that the jury would not believe him or his witnesses, and that Moyal had heard nothing new from McCarty. Based on Mr. Moyal's representations, petitioner entered a no contest plea to these charges on the afternoon of November 7, 2005.

17. Petitioner further declared that on the evening of November 7, 2005, McCarty called petitioner and told him that McCarty had interviewed Musolf on October 28, 2005. Musolf had admitted that on December 24, 2004, she bought alcohol at Safeway and had been drinking alcohol, and also admitted that she had lied about these facts at the preliminary examination. Mr. McCarty also told petitioner that he had mentioned Musolf's admissions to Mr. Moyal before the plea hearing.

18. McCarty also submitted a declaration stating that on Friday, October 28, 2005, he met with and interviewed Musolf. He knew that Musolf had testified at the preliminary examination that she had not purchased anything at the Pleasant Hill Safeway and had not consumed any alcohol on the date of the alleged assault, December 24, 2004. McCarty had obtained records from the Pleasant Hill Safeway showing that on December 24, 2004, someone, using Musolf's Safeway club card, had purchased a $22 bottle of Captain Morgan Spiced Rum (size unknown, but probably a 1.75 liter (double sized) bottle from the price), a "refrigerator pack" of Coca Cola (probably 12 cans), and nothing else. Musolf repeated her denials concerning buying and drinking alcohol. McCarty then confronted her with the Safeway records

and information that a witness had seen her drinking alcohol. Musolf then admitted that she had lied at the preliminary examination and had actually bought the alcohol and had been drinking on December 24, 2004.

19. McCarty further declared that, based on a review of his notes, he had advised Mr. Moyal of Musolf's admissions on November 1, 2004, before he left on a trip to Arkansas. He said that he saw Mr. Moyal in Martinez on November 1, 2004 and told him of the results of the Musolf interview. McCarty acknowledges that he submitted a previous declaration saying that he was unable to advise Mr. Moyal of the results of the Musolf interview before leaving for Arkansas, but based on his review of his notes, he believes that declaration was incorrect.

20. Also in support of the first habeas petition, petitioner submitted a second declaration attaching a letter from Maurice Moyal dated March 22, 2006 in response to his request for a declaration supporting a petition to withdraw his plea or for writ of *habeas corpus*. In this letter, Mr. Moyal stated that McCarty had informed petitioner **before** the plea about the results of his interview of Musolf, Musolf. This contradicted what Mr. Moyal had stated in his declaration supporting the motion to withdraw plea filed on December 8, 2005, that petitioner was unaware at the time of the plea that Musolf had admitted to McCarty that she had lied at the preliminary examination. Mr. Moyal's letter also contradicted various parts of the record. This letter is discussed further in the attached memorandum.

21. The superior court initially denied the petition without prejudice because it wanted the hearing transcripts attached as exhibits although they were part of the superior court's criminal file. It then denied the resubmitted petition.

23. The superior court denied the petitions using two different rationales. Its first decision simply stated that petitioner's attorney was not ineffective in advising petitioner to take the deal, despite problems with the government's case. In its second decision, the superior court said that petitioner had known that the Musolf had lied during the preliminary examination before he entered his plea. (Petitioner, however, did not know that Musolf had admitted lying to the defense investigator at the time of the plea.)

ORIGINAL                                                                    ORIGINAL

**f. Court of Appeals habeas corpus petition**

24. Petitioner then filed a habeas corpus petition in the Court of Appeal on March 12, 2007, which repeated the allegations of the superior court petition and attached a declaration of Angel Torres, not previously available, and not available at the time of the plea, that placed petitioner and a woman in the Concord Walgreen's at 3:30 pm on December 24, 2004. Torres declared that he saw petitioner walking into the Walgreen's with a dejected look on his face, and saw a short woman voluntarily following him and nagging at him. The Torres declaration is further evidence that Musolf was not telling the truth during the preliminary examination, as Musolf claims that the kidnaping began shortly after 2:00 pm. Based on petitioner's existing declaration, had petitioner had the information about Musolf's admission of perjury plus Torres' declaration at the time of the plea, he would not have entered it.

**g. Supreme Court habeas petition**

25. The Court of Appeal denied the petition on March 21, 2007. Petitioner then filed a timely habeas corpus petition with the California Supreme Court on June 15, 2007. On December 19, 2007, the California Supreme Court denied the petition. This petition is timely.

**3. Claims for relief**

25. Petitioner's counsel, Mr. Moyal, was ineffective because, although McCarty advised him before the plea hearing that Musolf had admitted lying during the preliminary examination, Mr. Moyal advised petitioner, at the time of the plea hearing, that Moyal had heard nothing new from McCarty.

26. Mr. Moyal was also ineffective in failing to inform the court of this fact in his motion to set aside the plea or during argument on it, but instead, telling the court that McCarty had not informed Moyal of the results of the interview of Musolf by the time of the plea hearing.

27. Petitioner has declared that, had he known, at the time of the plea hearing, that Musolf had admitted to McCarty that she had lied during the preliminary examination, he would not have entered a plea of no contest in response to the prosecutor's offer, but would have insisted on a trial.

28. Newly discovered evidence (Torres declaration) corroborates petitioner's claim that

Musolf was lying at the preliminary examination.

### 4. Need for writ remedy

29. Petitioner has no adequate remedy at law. Claims of ineffective assistance of counsel are properly raised through a habeas corpus petition. Petitioner has filed a habeas corpus petition before, which the court denied without prejudice because certain record documents were not attached.

### 5. Evidentiary hearing

30. Petitioner has never had an evidentiary hearing on his claims of ineffective assistance of counsel

### 6. Prayer for relief

Wherefore, petitioner prays that this court issue a writ of habeas corpus permitting petitioner to withdraw his no contest plea.

Dated: Oakland, California, Wednesday, May 14, 2008.

_____

**Robert J. Beles / Paul McCarthy**
Attorneys for *Petitioner ROBERT ANTHONY LYMAN*

---

### VERIFICATION

Petitioner is presently in custody outside of this county. I therefore verify this petition on his behalf. I declare under penalty of perjury that the facts stated in this petition are true and correct based on my review of the record or the state court proceedings. Executed in Oakland, California, on Wednesday, May 14, 2008.

_____

**Paul McCarthy**
Attorney for *Petitioner ROBERT ANTHONY LYMAN*

ORIGINAL                                                                    ORIGINAL

### In the United States District Court
### Northern District of California

| | |
|---|---|
| ROBERT LYMAN, | No. **C08 – 02478 JSW** |
| Petitioner, | MEMORANDUM OF POINTS AND |
| vs. | AUTHORITIES |
| LARRY SCRIBNER, Warden, Calipatria State Prison, California, | |
| *Defendant.* | |
| PEOPLE OF THE STATE OF CALIFORNIA, | |
| *Real Party in Interest.* | |

## MEMORANDUM OF POINTS AND AUTHORITIES

### 1. The state court opinion was an unreasonable application of established Supreme Court law.

The only "reasoned decisions" of the California state courts were the as the decision of the superior court.

The superior court misapprehended the issue in this petition in both of its decisions. In its first decision, without prejudice, the superior court held:

> "Even if trial counsel knew about the putative perjury, the court finds it is completely within professional norms and trial tactics to have advised his client to take the five year deal."

This was not the issue petitioner presented, however. Petitioner has complained that it was ineffective of trial counsel to advise him to take the five year deal ***without telling*** petitioner that Musolf had admitted to petitioner's investigator that she had lied during the preliminary examination.

In the second decision, the superior court held that, because petitioner knew of some evidence that Musolf had lied during the preliminary examination at the time of his plea, his declaration that he would not have pled had he learned of the additional evidence that Musolf had lied was not "credible." Again, the superior court misunderstood what the petition was about. It wasn't "additional evidence that Musolf had lied" that was at issue, it was Musolf's admissions to McCarty that she had lied in her testimony at the preliminary examination.

—1

Under established Supreme Court law, a petitioner whose plea was induced by ineffective assistance of counsel "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart* (1985) 474 U.S. 52, 57-59, 106 S. Ct. 366, 369-371, 88 L. Ed. 2d 203. The superior court's decisions show that, assuming it applied *Hill v. Lockhart* wrong, it did so "unreasonably" within the meaning of AEDPA, since it misinterpreted what the undisclosed matters actually were and thus could not have reasonable determined whether there was a reasonable probability that petitioner would not have pleaded guilty.

### 2. Musolf's admission of lying had much greater weight than mere evidence that she had lied.

As the Ninth Circuit has repeatedly recognized:

> "A confession is like no other evidence. Indeed, the defendant's own confession is probably the most probative and damaging evidence that can be admitted against him."

*Anderson v. Terhune*, 516 F.3d 781, 792 (9th Cir. 2008), quoting *Arizona v. Fulminante*, 499 U.S. 279, 296, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991), *Barker v. Fleming*, 423 F.3d 1085, 1098 (9th Cir. 2005), *United States v. Williams*, 435 F.3d 1148, 1162 (9th Cir. 2006), *Silva v. Brown*, 416 F.3d 980, 987 (9th Cir. 2005), *Horton v. Mayle*, 408 F.3d 570, 579 (9th Cir. 2005), *Hayes v. Brown*, 399 F.3d 972, 986 (9th Cir. 2005), *Alcala v. Woodford*, 334 F.3d 862, 890 (9th Cir. 2003) (also noting that if an attorney confronts a witness with evidence that his testimony is false, the witness "probably would have elected not to lie to the jury"), *Henry v. Kernan*, 197 F.3d 1021, 1029-1030 (9th Cir. 1999).

Similarly, Musolf's admission that she had lied under oath would have had far more weight to a jury than mere evidence from other witnesses that Musolf was lying about what she described. Moreover, Musolf's admitted perjury was critical, since it undermined the prosecution's theory of the case.

At the preliminary examination, Musolf testified that December 24, 2004, at 2:00 pm, she had met petitioner at his apartment complex and told him she wanted to go shopping,. She said that petitioner asked to go with her. (PX 7.) Once the two got into her son's van, insisted

on driving, and the altercation between the two began (which she described, and the prosecution charged, as a kidnaping and beating.) (PX 7-8.) Musolf further testified that the van made no stops until she got out of the van and into Browne's car, (PX. p. 13, 25.) Browne testified that she first saw Musolf and petitioner scuffling in the van at about 4:00 pm, two hours after the supposed kidnaping took place.

### 3. Musolf's confession undermined the prosecution's kidnaping theory

Musolf's admission that she had lied about buying liquor at Safeway and drinking it completely undermined her testimony. The receipt, which she admitted was of her purchase, showed that she was in Safeway ten minutes after she had testified the kidnaping began, buying rum and cokes. Obviously, she could not have been kidnaped at that point, since she freely went into the Safeway. Her admission turned a kidnaping into a shopping trip which may or may not have turned into a "kidnaping" later. Petitioner knew about the Safeway receipt at the time of the plea, but Musolf's admission made it conclusive.

Moreover, Musolf admitted that she had lied about drinking alcohol prior to the alleged kidnaping during the preliminary examination. During the preliminary examination, Musolf admitted that she had been at Dwayne Taylor's apartment, in the same complex as petitioner's, before leaving with him. She was asked if she had been drinking with Taylor. Musolf denied it. She was asked if Taylor would be lying if he testified that she was drinking. Musolf insisted that he would be. (PX pp. 25-26.) Her admission that she had tried to conceal her drinking suggests that she had consumed enough alcohol to be under the influence when she left with petitioner. Petitioner's insisting on driving because Musolf was under the influence would not be "kidnaping."

### 4. The newly discovered Torres statement further undermined the kidnaping theory.

Angel Torres declared that he saw petitioner walking into a Walgreens at about 3:30 pm on the afternoon of the alleged kidnaping. Torres said that petitioner had a dejected look on his face, and a short woman was walking after him who appeared to be nagging him. Obviously, Musolf was not being "kidnaped" if she was voluntarily following petitioner into a store.

—3—

ORIGINAL                                                                ORIGINAL

As this event occurred during the alleged kidnaping, only a half an hour before Browne supposedly "rescued" petitioner, it also undermined the prosecution's theory of the case. Between 2:00 and at least 3:30 that afternoon, if Torres was believed, the "kidnaping" was really a voluntary shopping trip.

Torres' declaration brought new meaning to a portion of Browne's testimony. Browne testified that after Musolf got into Browne's car, she asked Browne to take her back to a Walgreen's, where she though she had left her purse, and Brown did so before taking Musolf to the hospital to have her bruises treated. (PX p. 54.) Browne's testimony corroborated Torres' declaration about seeing petitioner and the short woman in the Walgreen's at 3:30 pm.

### 5. Petitioner entered his plea due to his counsel's misconduct and ineffective assistance.

### a. Petitioner is entitled to the effective assistance of counsel at all stages of the criminal proceeding, including the plea.

Under the Sixth Amendment to the United States Constitution, as applied to the States through the Fourteenth Amendment, a criminal defendant has a right to the effective assistance of counsel at all critical stages of a proceeding when his substantial rights may be affected. *Mempa v. Rhay,* 389 U.S. 128, 134, 88 S.Ct. 254, 19 L.Ed.2d 336, 340 (1967). Plea bargaining and pleading are critical stages in the criminal process at which a defendant is entitled, under the Sixth Amendment to the United States Constitution, to the effective assistance of legal counsel. *Hill v. Lockhart,* 474 U.S. at 57-59, 106 S. Ct. at 369-371, 88 L. Ed. 2d 203. It is well settled that where ineffective assistance of counsel results in the defendant's decision to plead guilty, the defendant has suffered a constitutional violation giving rise to a claim for relief from the guilty plea. *Id.*

### b. Petitioner's counsel was ineffective

### i. Counsel concealed Musolf's confession

In the state courts, petitioner alleged that his counsel induced him to accept the plea by withholding the information that McCarty had obtained a confession from Musolf that she had lied during the preliminary examination. Petitioner also alleged that McCarty had reported the confession to counsel before the plea hearing, and that counsel had deliberately withheld it to

—4—

ORIGINAL                                                                        ORIGINAL

induce petitioner to accept the plea offer. It is petitioner's decision whether or not to accept a

plea offer, not counsel's, and to do so voluntarily, knowingly, and intelligently, petitioner has

a right to be advised of all of his possible defenses before doing so. It is counsel's duty to advise

petitioner of all possible defenses before advising him to accept a plea offer. Moreover,

deliberately withholding material evidence to induce petitioner to plead shows complete

disloyalty to the client – the court is faced with an attorney who would deliberately trick a client

to take a deal so that the attorney would not have to try the case.

Petitioner declared that Moyal told him that he had heard nothing from McCarty.

McCarty declared that about a week before the plea hearing, he told Moyal that he had obtained

admissions from Musolf that she had deliberately lied during the preliminary examination.

Petitioner and McCarty's declarations show that counsel Moyal did not merely fail to investigate

petitioner's defenses before advising petitioner to enter his no contest plea, but misrepresented

critical material facts to petitioner to induce him to enter the plea [1], and similarly misrepresented

facts to the court to cover up his own conduct. If petitioner is correct, this is more than mere

ineffectiveness, but amounted to abandoning one's role as defense counsel. In *United States v.

Swanson*, 943 F.2d 1070 (9th Cir. 1991), defense counsel, in closing argument, conceded that

the prosecution had proven defendant guilty beyond a reasonable doubt. The Ninth Circuit held

that by doing so, defense counsel "failed to function in any meaningful sense as the

Government's adversary.'" *Swanson, id.* at 1074, quoting *Osborn v. Shillinger*, 861 F.2d 612,

625 (10th Cir.1988) and *United States v. Cronic*, 466 U.S. 648, 666, 104 S.Ct. 2039, 2051, 80

L.Ed.2d 657 (1984).

---

[2] Even if Mr. Moyal had not learned of the results of McCarty's interview of Musolf, he had a duty to
obtain up to date reports from the investigator before advising petitioner to accept a five year offer. A
failure to investigate and advise a defendant of possible defenses is ineffective if defenses exist. Counsel's
first duty is to investigate the facts of his client's case and to research the law applicable to those facts.
*Kimmelman v. Morrison*, 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986), *Baylor v. Estelle*, 94
F.3d 1321 (9th Cir. 1996). Counsel can't excuse his failure to investigate facts that he is aware of as a
"tactical" decision, *Evans v. Lewis*, 855 F.2d 631, 636-637 (9th Cir. 1988), *Sanders v. Ratelle*, 21 F.3d
1446, 1457 (9th Cir.1994), *Hart v. Gomez*, 174 F.3d 1067, 1070-1071 (9th Cir. 1999). A "tactical
decision" presupposes reasonable investigation, *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052,
80 L.Ed.2d 674 (1984).

—5—

ORIGINAL                                                    ORIGINAL

> "An effective attorney 'must play the role of an active advocate, rather than a mere friend of the court.' " *Osborn*, 861 F.2d at 624 (quoting *Evitts v. Lucey*, 469 U.S. 387, 394, 105 S.Ct. 830, 835, 83 L.Ed.2d 821 (1985)). Instead of serving as his client's advocate during closing argument, Mr. Ochoa abandoned his client at a critical stage of the proceedings and affirmatively aided the prosecutor in her efforts to persuade the jury that there was no reasonable doubt."

*United States v. Swanson*, 943 F.2d at 1075.

Petitioner learned of McCarty's findings on the evening of November 7, 2004, immediately after he had entered his no contest plea. He insisted that Moyal file a motion to withdraw the plea. Moyal filed a motion on December 8, 2006 in which he declared under penalty of perjury that petitioner had been unaware of the results of the McCarty interview at the time of plea. At the sentencing hearing, Moyal told the court that McCarty had not told him about Musolf's admissions before the plea hearing. Based on McCarty's declaration, this was not accurate, but Moyal stated the facts inaccurately to minimize his own failures.

The record contains three statements by plea about what occurred, all of which are inconsistent with each other. Among the exhibits are the declaration that Mr. Moyal filed in support of petitioner's motion on December 8, 2004, to set aside his plea, the transcript of the hearing on that motion, in which Mr. Moyal made factual allegations, and the letter Mr. Moyal wrote to petitioner in response to petitioner's request for a further declaration.

In the December 8 declaration, Mr. Moyal declared that petitioner did not know about the results of McCarty's interview of Musolf. In his statement in court on January 6, 2006, Mr. Moyal advised the court that McCarty had not told him of the results of his interview of Musolf by the time of the plea hearing. In his March 22, 2006 letter to petitioner, Mr Moyal said that McCarty had told petitioner of the Musolf interview results before the plea, contradicting his December 8 declaration. Mr. Moyal further stated, concerning those results: "...you knew full well the evidence that we had to present at your trial... You and I both discussed your chances at trial..." In the context of the letter, Mr. Moyal was stating that he and petitioner discussed the interview results at the time of the plea, contradicting what Moyal had told the court on January 6, 2006, that McCarty had not advised him of these results at the time of the plea. Mr. Moyal also made statements contradicting the record, saying that "when we went to court for the

—6—

ORIGINAL                                                                    ORIGINAL

1   hearing on the 995 motion, you personally agreed to the plea bargain that was offered." The

2   record shows that the 995 motion was not filed until long after the plea.

3           ii. **Petitioner was prejudiced by Moyal's ineffective assistance.**

4       Petitioner declared that had he been aware of the true facts at the time of the plea, he

5   would have insisted on a trial.

6       If defense counsel's conduct was so egregious that it amounted to an abandonment of his

7   role as counsel, no prejudice need be shown. *United States v. Swanson*, 943 F.2d at 1072 citing

8   *United States v. Cronic*, 466 U.S. at 658, 104 S.Ct. at 2046, and *Toomey v. Bunnell*, 898 F.2d

9   741, 744 n. 2 (9th Cir. 1990).

10      If defense counsel's conduct did not amount to an abandonment of his role as defense

11   counsel, to have a plea set aside that has been induced by ineffective assistance of counsel,

12   petitioner "must show that there is a reasonable probability that, but for counsel's errors, he

13   would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474

14   U.S. 52, 59. The "reasonable probability" standard does not require that petitioner show that

15   he would have prevailed at trial. It does not permit the court to substitute its own judgment of

16   what would have been in a defendant's best interests for the decision the defendant would

17   probably have made, since the ultimate authority remains with the defendant "to make certain

18   fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in

19   his or her own behalf, or take an appeal." *Jones v. Barnes*, 463 U.S. 745, 751, 103 S. Ct. 3308,

20   77 L. Ed. 2d 987 (1983).

21      At the time of the plea, petitioner knew that the defense had a Safeway receipt showing

22   that someone had used Musolf's Safeway Club Card to buy rum and coke ten minutes after the

23   alleged kidnaping began, and had a witness, Taylor, who was willing to testify that Musolf had

24   been drinking before she left with petitioner. Presumably, petitioner was prepared to testify that

25   he drove the van because Musolf had been drinking, and that Musolf voluntarily went into the

26   Safeway to make the purchase. He also knew that, at trial, the jury might not believe him or

27   Taylor and that the prosecutor could argue that someone else might have used Musolf's club

28   card (perhaps the son whose van it was.) Given this state of the evidence known to him, he

—7

ORIGINAL                                                                                    ORIGINAL

followed counsel's advice and accepted the plea bargain.

However, counsel did not tell petitioner that Musolf had admitted lying under oath during the preliminary examination. This new evidence created a totally new case. Musolf's admission of perjury completely undermined her credibility, and the specific perjury undermined the prosecution's kidnaping theory. Petitioner found out about Musolf's admissions of perjury on the evening of the day he entered his plea, and demanded that defense counsel to file a motion to withdraw the plea only a few days later, long before the sentencing hearing! That petitioner almost immediately sought to withdraw his plea upon learning simply of Musolf's confession (and not the Torres information) shows a very strong probability that he would not have entered his plea in the first place had he learned of the confession at the time of the plea hearing.

### 6. The prosecution has not performed its duty to correct false testimony of its witness, Musolf

It is a violation of due process for the prosecutor to present false evidence or allow false evidence that he has presented to go uncorrected when it appears. *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). The prosecutor's duty to correct false evidence does not require a finding that the prosecutor knowingly or intentionally presented false evidence, and the prosecutor's duty extends beyond the time he or she obtains a defendant's conviction. If he or she obtains a defendant's conviction based in part on false evidence, and later learns of the falsity of the evidence, due process demands that he or she take affirmative steps to correct the error. *Thompson v. Calderon,* 120 F.3d 1045 (9th Cir. 1997).

The prosecutor's failure to correct false testimony of prosecution witnesses or disclose information that would show such testimony to be false requires that a plea entered in reliance on such false testimony be set aside, since otherwise, the prosecutor would be profiting from its own failures.

### 7. The Torres statement is newly discovered evidence that was not available at the time of the plea

In preparing for trial, if petitioner's attorney could have discovered and communicated Torres' information to petitioner with diligence, his failure to do so was ineffective; if not, the

—8—

ORIGINAL                                    ORIGINAL

Torres statement is newly discovered evidence that was not available at the time of the plea (at least, not available to petitioner.) Petitioner has declared that had he known that Torres was available to testify as a witness concerning the matters in his declaration, he would not have entered his plea. As with the Musolf confession, the Torres statement completely changed the nature of the prosecution's case against petitioner, turning it from a fairly strong case to a weak and questionable case. [2]

### 8. Material facts are in dispute, necessitating an evidentiary hearing at which Mr. Moyal will be subject to cross-examination.

Petitioner has alleged material facts which, if proven, would entitle him to withdraw his plea. Furthermore, petitioner has shown that these material facts are in dispute. Consider the following:

a. McCarty has declared that he told Moyal about Musolf's interview results before the plea. Moyal stated in court on January 6, 2006, that McCarty did not tell him about Musolf's interview results until after the plea, but suggested in his letter to petitioner that they had discussed the Musolf interview results at the time of the plea.

b. Petitioner has declared that he did not learn of Musolf's interview results until after the plea. Moyal declared on December 8, 2005 that petitioner did not learn of the interview results until before the plea, but then stated in his letter to petitioner that McCarty told petitioner of the interview results before the plea.

There is not simply a material factual dispute between petitioner and McCarty's statements as compared with Moyal's, but Moyal's various statements themselves raise a material factual dispute. Each time Moyal has to justify his actions, he offers a different, mutually exclusive excuse. Given the inconsistencies in Moyal's various statements, it is not possible to resolve the material factual dispute short of an evidentiary hearing at which Moyal can be subject to cross-examination.

In determining whether a petitioner is entitled to an evidentiary hearing under AEDPA, the district court:

---

[2] Respondent might argue that it is likely that petitioner would have still been convicted, since Musolf had bruises and escaped from the van into Browne's car. But there is a big difference between a domestic dispute that develops in the last half hour of a shopping trip, even if it resulted in a physical assault, and the two hour kidnaping and continual beating that was charged.

1

"must determine whether a factual basis exists in the record to support the petitioner's claim. If it does not, and an evidentiary hearing might be appropriate, the court's first task in determining whether to grant an evidentiary hearing is to ascertain whether the petitioner has 'failed to develop the factual basis of a claim in State court.' . . . . If the applicant has not 'failed to develop' the facts in state court, the district court may proceed to consider whether a hearing is appropriate or required under *Townsend v. Sain*, 372 U.S. 293, 83 S. Ct. 745, 9 L. Ed. 2d 770 (1963)[overruled on other grounds in *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 5, 112 S. Ct. 1715, 118 L. Ed. 2d 318 (1992)]."

*Earp v. Ornoski*, 431 F.3d 1158, 1166 (9th Cir. 2005), quoting *Insyxiengmay v. Morgan*, 403 F.3d 657, 669-70 (9th Cir. 2005) and *Baja v. Ducharme*, 187 F.3d 1075, 1078 (9th Cir. 1999).

Under AEDPA, "a failure to develop the factual basis of a claim is not established unless there is a lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Insyxiengmay v. Morgan*, 403 F.3d at 670, quoting *Williams v. Taylor*, 529 U.S. 420, 432, 120 S. Ct. 1479, 146 L. Ed. 2d 435 (2000). In *Insyxiengmay*, the defendant claimed an informer was a material witness and challenged the trial court's decision to exclude him and defense counsel from an in-camera hearing on the materiality of the informer's testimony as a violation of his rights under the Fifth and Sixth Amendments. The Ninth Circuit held that "fault cannot be attributed to Insyxiengmay" in failing to develop the factual basis of his claim that the informer was a material witness "because both he and his counsel were barred from the *in camera* hearing." *Id.* Fault also could not be attributed to Insyxiengmay's counsel, because the court excluded counsel from the *in camera* hearing and refused to allow him to submit questions for the court to ask the informant. *Insyxiengmay v. Morgan*, 403 F.3d at 671. See *Jones v. Wood*, 114 F.3d 1002, 1013 (9th Cir. 1997) ("It is clear that *Jones* did not 'fail to develop' the factual basis of either of his claims; rather, the state courts denied him the opportunity to develop the facts by failing to hold an evidentiary hearing.")

A petitioner is entitled to an evidentiary hearing in federal court if the state court's decision was an unreasonable determination of the facts. *Earp v. Ornoski*, 431 F.3d at 1166-1167, citing *Lockyer v. Andrade*, 538 U.S. 63, 71, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).

"*Townsend* establishes that a defendant is entitled to an evidentiary hearing if he can show that:

—10

> (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair hearing.

> *Townsend*, 372 U.S. at 313. If the defendant can establish any one of those circumstances, then the state court's decision was based on an unreasonable determination of the facts and the federal court can independently review the merits of that decision by conducting an evidentiary hearing. See *Taylor v. Maddox*, 366 F.3d 992, 1001 (9th Cir. 2004) ('If, for example, a state court makes evidentiary findings without holding a hearing and giving petitioner an opportunity to present evidence, such findings clearly result in an "unreasonable determination" of the facts.')."

*Earp v. Ornoski*, 431 F.3d at 1167.

Where the factual basis for a claim is "adequately proffered" to the state court, but the state court does not hold an evidentiary hearing, a petitioner is entitled to an evidentiary hearing in federal court:

> "Where the petitioner establishes a colorable claim for relief and has never been afforded a state or federal hearing on this claim, we must remand to the district court for an evidentiary hearing. *Insyxiengmay*, 403 F.3d at 670; *Stankewitz v. Woodford*, 365 F.3d 706, 708 (9th Cir. 2004); *Phillips v. Woodford*, 267 F.3d 966, 973 (9th Cir. 2001). In other words, a hearing is required if: '(1) [the defendant] has alleged facts that, if proven, would entitle him to habeas relief, and (2) he did not receive a full and fair opportunity to develop those facts[.]' *Williams v. Woodford*, 384 F.3d 567, 586 (9th Cir. 2004)."

*Earp v. Ornoski, id.*

In *Earp v. Ornoski*, defendant claimed that the prosecutor committed misconduct by intimidating a post-trial witness named Michael Taylor to prevent him from testifying in support of a new trial motion. Defendant was charged with murder of a child. At trial, defendant testified that he had been babysitting the child and working around the house when another individual, Morgan, arrived. Defendant went outside to clean paintbrushes and left Morgan alone with the child. About a half hour later, defendant went back inside, found the child motionless at the bottom of a flight of stairs, and called emergency services. Morgan testified that he had never been to the child's house. No witness other than defendant was able to place Morgan at the house.

ORIGINAL                                                                ORIGINAL

After defendant was convicted of murdering the child, defendant located a jail inmate, Taylor, who had been in jail with Morgan and had overheard Morgan tell another inmate that he had been at the house on the day the child died and that he was afraid defendant would "come after him" because he had lied at trial. Taylor made an initial statement to this effect to the defense investigator, and then retracted it. He later declared that he had retracted the statement because the prosecutor and a sheriff's deputy had told him "would never get out" if he stood by his statement.

Defendant supported his claim in the state collateral relief petition with declarations from Taylor, the defense investigator, defendant's attorney, and a transcript of part of the prosecutor's interview with Taylor. Without conducting a hearing, the state court denied Earp's prosecutorial misconduct claim.

Under these circumstances, the Ninth Circuit held that Taylor had "adequately proffered" the factual basis of his claim to the state court, but never received an opportunity to develop his claim of prosecutorial misconduct in state court, because the state court had not held an evidentiary hearing.

> "Because we find that such a hearing was necessary to make the credibility determination upon which rejection of Earp's claim depends, we conclude that he has not had a 'full and fair' opportunity to develop the facts supporting his claim, see *Townsend*, 372 U.S. at 313, and, consequently, the state court decision summarily denying him habeas relief was based on an unreasonable determination of the facts, 28 U.S.C. § 2254(d)(2); *Taylor [v. Maddox]*, 366 F.3d at 1001."

*Earp v. Ornoski*, 431 F.3d at 1169.

Petitioner stated a colorable claim of ineffective assistance. The facts are disputed by petitioner's attorney Moyal, who has taken various mutually exclusive positions concerning the facts. Petitioner adequately proffered the facts to the State courts, but was denied an evidentiary hearing. Accordingly, the federal courts must grant him an evidentiary hearing.

### 9. Conclusion

The underlying issues here go beyond petitioner's constitutional rights. The facts alleged by petitioner, and supported by Mr. Moyal's own contradictory statements, suggest that Mr. Moyal was not merely ineffective, but engaged in misconduct, misrepresenting the facts both to

petitioner and the superior court.

Dated: Oakland, California, Wednesday, May 14, 2008.

_____

**Robert J. Beles**
**Paul McCarthy**
Attorneys for *Petitioner* ROBERT ANTHONY LYMAN

—13—